### 44980. CITIZENS & SOUTHERN NATIONAL BANK v. BENTON.
#### (363 SE2d 549)

PER CURIAM.

Benton Brothers Drayage and Storage Company (Benton Bros.) had begun borrowing from the appellant, Citizens and Southern National Bank (C&S, or the bank), in 1954. Its sole owner, E. J. Benton, Jr., was working with C&S to reduce the debt (which he alone had personally guaranteed, and which was recognized as a problem) by the sale of part of the company's assets. In 1974, he gave C&S a secondary security deed on his family home as additional collateral for the company's debt, which then totalled about $2 million.

In 1977, pursuant to a plan to provide more capital for the ailing business, C&S wrote a letter to Mrs. Benton's mother, Mrs. Gilbert, stating as follows: "The purpose of this letter to you is to serve as our commitment that in consideration for your advancing to Mrs. Julie Benton the sum of $25,000 now, and an additional $10,000 *on the closing of your home in Bay Shore, New York,* The C&S National Bank will allow the sale of the personal residence of E. J. Benton, Jr., to Julie Benton for the above mentioned sum. The $25,000 will consist of $10,000 advanced individually by you, plus a note from C&S Bank to you in the sum of $15,000[,] all of which will be deposited to the Benton Bros. checking account. Upon the receipt of the final $10,000 from you, the entire mortgage on the personal residence will be signed over to Mrs. Benton for her own protection." (Emphasis supplied.) In reliance on this commitment, Mr. Benton transferred the home to his wife (appellee), and Mrs. Gilbert advanced the $25,000 and later repaid the $15,000 note the month after the closing of her New York home (of which closing C&S was not informed). Neither the appellee, her mother, nor anyone else undertook any obligation to pay the remaining $10,000 to C&S. C&S did not seek to claim the $10,000 from the appellee or her mother, but instead wrote a letter to Mr. Benton requesting payment of this sum.

In 1980, Benton Bros. went bankrupt, and a new C&S loan officer, not knowing of the sale of the Bay Shore house or other terms or status of the first offer, made another and new offer to E. J. Benton, Jr., to release the secondary mortgage by April 18, 1980. This offer was not accepted, and Mr. Benton died later that year. In 1985, C&S notified the appellee that the approximately $224,000 Benton Bros. debt remaining after C&S recovered a sum from the bankrupt estate, was secured by her home, and it began foreclosure proceed-

ings. The appellee paid the final $10,000 installment of the purchase price of her home into the registry of the court and filed an action against C&S, seeking in Count 1 to enjoin the foreclosure proceedings and in Count 2 alleging a release of the property by the bank's settlement with the trustee in bankruptcy.

In a special verdict, the jury found that the plaintiff-appellee did not lose her right to pay the balance by failing to pay when the Bay Shore property was sold, and that the bank had waived its right to foreclose against the appellee's property by failing to demand a timely payment of the balance. The trial court ordered the second mortgage cancelled, and permanently enjoined the foreclosure proceedings, from which judgment the bank appeals.

1. The bank enumerates as error the trial court's failure to grant its motions for directed verdict and for judgment notwithstanding the verdict as to Counts 1 and 2.

The bank concedes that its right to foreclose under the deed to secure debt could be lost if there was a valid enforceable contract by which the terms of the deed were altered. However, the bank contends the evidence demands a finding that the negotiations among the parties never ripened into a contract but remained at the offer stage. We do not agree. We hold the evidence supports the jury's verdict and is subject to the following construction: The bank was the grantee in a deed to secure debt. The grantor was Mr. Benton who conveyed title to the Benton family home as security for his business debt. When the business began to fail a fear arose that the home might be lost. To help prevent this the Bentons wanted to vest title in Mrs. Benton. The bank was willing for the home to be sold by Mr. Benton to Mrs. Benton provided a reasonable purchase price was paid which would inure to the benefit of the business and incidentally to the benefit of the bank as well. A purchase price of $35,000 was acceptable to the bank. Mrs. Benton called on her mother, Mrs. Gilbert, for financial assistance. At this point there was an exchange of promises between the bank on the one hand and the Bentons and Mrs. Gilbert on the other. The Bentons and Mrs. Gilbert promised that Mrs. Gilbert would advance to Mrs. Benton the $35,000 purchase money. The Bentons promised the $35,000 would be deposited to the credit of the business and thus indirectly to the benefit of the bank. In exchange for these promises the bank promised to approve of the sale of the home and to assign its interest under the deed to secure debt to Mrs. Benton. Thus a bilateral contract was created through the exchange of mutual promises. *Aspironal Laboratories v. Rosenblatt*, 34 Ga. App. 255 (129 SE 140) (1925); OCGA § 13-3-42; 1 A. Corbin, Corbin on Contracts, § 142 (1963).

The failure of Mrs. Gilbert to pay $10,000 at the time it was promised (on the closing of her home in New York) may constitute a

partial breach of contract for which a right of damages may exist. However, the late payment of this sum does not relieve the bank of its duty to perform its promise. 4 A. Corbin, Corbin on Contracts, § 945 (1963).

2. The appellant's enumerated errors 2, 4 and 6 seek to raise issues pertaining to Count 2. However, these issues are not reached because the result in Division 1 of this opinion disposes of the case.

*Judgment affirmed. All the Justices concur, except Marshall, C. J., Smith and Weltner, JJ., who dissent.*

MARSHALL, Chief Justice, dissenting.

Mrs. Gilbert's failure to provide the additional $10,000 capitalization to Benton Brothers Drayage and Storage Company prior to its becoming insolvent defeated the purpose of the parties in entering into the contract. Consequently, in my opinion, the trial court erred in ordering the cancellation of the secondary security deed, and in enjoining the foreclosure thereof. However, I think that the appellant should have been ordered to make restitution to the appellee in the amount of the $25,000 expended by appellee's privy, Mrs. Gilbert, in her partial performance of the agreement with the appellant to cancel the secondary security deed. Stated somewhat differently, the appellant made an offer to cancel the secondary security deed based upon the provision of $35,000 capitalization to the corporation, and, since only $25,000 was paid into the corporate coffers, the acceptance of this offer was only partially performed. Consequently, I would reverse the judgment, but on the condition that such restitution be made.

I am authorized to state that Justice Smith and Justice Weltner join in this dissent.

DECIDED JANUARY 15, 1988 —
RECONSIDERATION DENIED FEBRUARY 4, 1988.

*Adams, Garner, Ellis & Inglesby, Sam P. Inglesby, Jr.,* for appellant.

*Miller, Simpson & Tatum, John M. Tatum,* for appellee.